**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MANUEL ROBERT LUCERO,** | **1:18-cv-01448-LJO-SAB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (ECF No. 24, 26)** |
| **v.** | |
| **ANTHONY ROBERT PENNELLA,** *Individually and in his Official Capacities;* | |
| **JERRY E. POWERS,** *Individually and in his Official Capacities;* | |
| **G. HOFFMAN,** *Parole Agent Supervisor, Individually and in his Official Capacities;* | |
| **B. RODRIGUEZ,** *Parole Agent, Individually and in his Official Capacities; and* | |
| **INTERSTATE COMMISSION FOR ADULT OFFENDER SUPERVISION,** *Individually and in his Official Capacities* | |
| **Defendants.** | |

## I. <u>INTRODUCTION</u>

Plaintiff Manuel Robert Lucero ("Plaintiff" or "Lucero") is a non-prisoner litigant proceeding pro

se and in forma pauperis. Lucero sues under 42 U.S.C. § 1983 seeking declaratory and injunctive relief

from special conditions of parole imposed upon him after his transfer from Massachusetts to California

1

pursuant to the terms of Interstate Compact for Adult Offender Supervision (the "Interstate Compact" or "Compact").[1] Lucero has sued the Interstate Commission for Adult Offender Supervision ("ICAOS" or the "Commission"), as well as Anthony Robert Pennella, Jerry Powers, G. Hoffman, and B. Rodriguez (the "individual Defendants"), in their individual and official capacities, claiming that his Fourth, Fifth, and Fourteenth Amendment rights have been violated as a result of actions taken by the Commission and the individual Defendants after his move to California.

The Interstate Commission and the individual Defendants moved to dismiss the complaint in two separate motions. ECF Nos. 24 & 26. Plaintiff opposed the motions, ECF Nos. 28 & 29, and the Commission replied while the individual Defendants did not. ECF No. 30. The matter was taken under submission on the papers pursuant to Local Rule 230(g). For reasons set forth below, Defendants' motions to dismiss are granted in part and denied in part.

## II. <u>FACTUAL BACKGROUND</u>[2]

On or about December 20, 2017, Plaintiff was found guilty by a jury of two felony counts for rape under Massachusetts Gen. Law c. 265, §22(b). ECF No. 1, "Compl.", at ¶ 14 & Ex. A. Plaintiff was sentenced on December 27, 2017 in the Worcester County Superior Court in Massachusetts to 18 months of prison time for the first count and three years of probation for the second count to be served consecutively. *Id.*, Ex. A at p. 10; *see also id.* at ¶¶ 15-16. Plaintiff alleges that the only conditions of

---

[1] The Interstate Compact is "a formal agreement between member states that seeks to promote public safety by systematically controlling the interstate movement of certain adult offenders." Introduction, Interstate Commission for Adult Offender Supervision Rules, available at https://www.interstatecompact.org/step-by-step/introduction (last visited July 24, 2019). The Compact "has congressional consent under Article I, § 10 of the United States Constitution and pursuant to Title 4, Section 112(a) of the United States Code" and created the Interstate Commission for Adult Offender Supervision. *Id.* "The Interstate Commission for Adult Offender Supervision is charged with overseeing the day-to-day operations" of the Compact and it promulgates rules "to effectuate the purposes of the compact and assist the member states in complying with their obligations by creating a uniform system applicable to all cases and persons subject to the terms and conditions of the compact." *Id; see also* Cal. Penal Code § 11180 ("It is the purpose of this compact and the Interstate Commission created hereunder . . . to provide the framework for the promotion of public safety and protect the rights of victims through the control and regulation of the interstate movement of offenders in the community; to provide for the effective tracking, supervision, and rehabilitation of these offenders by the sending and receiving states; and to equitably distribute the costs, benefits, and obligations of the compact among the compacting states.").

[2] The following facts are drawn from Plaintiff's Complaint in this matter and are accepted as true only for the purpose of this motion to dismiss. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012).

probation imposed by the Massachusetts judge were: 1) to provide a DNA sample to the state police database; 2) to comply with a "no contact" and "stay away" order with regard to the victim; 3) participation in a sex offender evaluation and treatment program as recommended; 4) registration as a sex offender; 5) GPS monitoring with no exclusion zones; and 6) reporting to probation biweekly in person. *Id.*

On February 20, 2018, Plaintiff was released from incarceration and placed on probation supervision by the Worcester County Probation Department. *Id.* at ¶ 17. Plaintiff requested his probation officer initiate the process to transfer Plaintiff pursuant to the Interstate Compact to his home state of California. *Id.* at ¶18. Plaintiff spoke with Ms. Donna Reed of the Massachusetts ICAOS office who told Plaintiff that California, the receiving state, was not able to impose any conditions other than those ordered by the trial judge and imposed by the sending state's probation office since Plaintiff was on probation not parole. *Id.* at ¶ 20. Plaintiff never received any notification, directly or from a third-party, that California would modify the conditions ordered by the Massachusetts court or add additional conditions. *Id.* at ¶ 22.

Plaintiff's mother who sought to provide her son with residence upon his return to California eventually was contacted by Agent Guadalupe Capozzi in the Hanford Office of the California Department of Corrections and Rehabilitation's ("CDCR") Division of Adult Parole Operations ("DAPO") in order to set up a time for an inspection of the residence for the purposes of the transfer. *Id.* at ¶¶ 23, 25. Plaintiff's mother indicated to Agent Capozzi that Plaintiff was sentenced to probation, not parole, to which Agent Capozzi responded that it was her understanding that Plaintiff was on parole. *Id.* at ¶ 26. After his mother indicated the involvement of DAPO in the transfer, Plaintiff contacted his probation officer in Massachusetts who indicated there must be some sort of administrative confusion and recommended that Plaintiff contact the California ICAOS office. *Id.* at ¶29. Plaintiff contacted the ICAOS office in Sacramento twice by telephone. *Id.* at ¶¶ 30-31. After explaining his issue of being a probationer in Massachusetts but being assigned as a parolee in California, a woman indicated that if he

was on probation he would remain on probation after the transfer. *Id.* at ¶ 30. The second time he called Plaintiff was transferred to a man identified as Chris who told Plaintiff he was unable to provide Plaintiff with any information on the status or stages of his transfer request. *Id.* at ¶ 32.

On or about March 28, 2018 Plaintiff received a notification from his probation officer in Massachusetts that his interstate transfer request was approved and he was able to return to California. *Id.* at ¶ 33. Plaintiff signed paper work agreeing to the issuance of a travel permit and he arrived in California on March 29, 2018. *Id.* at ¶¶ 33-34. On March 30, he reported in-person to the address indicated on the ICAOS instructions given to him by his Massachusetts probation officer. *Id.* at ¶ 35. Upon arriving at the address, Plaintiff learned that the address was for the Division of Adult Parole Operations unit serving Hanford. *Id.* While there, Plaintiff was outfitted with a GPS monitoring system and told by a parole agent that he must sign a list of over 40 separate "special conditions" in addition to the typical conditions of California parole. *Id.* at ¶ 36. Plaintiff specifically alleges that these 40 "special conditions" applied specifically to him and were not common conditions of parole. Plaintiff further alleges that he signed, under duress, indicating he would obey these conditions for the length of the supervision period under duress. *Id.* at ¶ 36. Plaintiff attached a complete list of the numerous special conditions imposed as an exhibit to his Complaint, but by way of example some of the special conditions imposed by California that go beyond the probation conditions imposed by the Massachusetts state court include:

- No alcohol consumption or over the counter medication which includes alcohol
- Requirement to submit to urine or breath sample at any time
- Prohibition against entering any business whose primary purpose is serving alcoholic beverages
- Requirement to enroll and successfully complete a substance abuse treatment program
- Requirement to submit to a psychological assessment and treatment
- Requirement to submit to polygraph examination, questioning Plaintiff about his treatment, crimes which he was convicted, and related criminal behavior
- Requirement to waive psychotherapist-patient privilege to allow full disclosure of communication to parole agent
- Prohibition against traveling beyond 50 miles of home address
- Prohibition against obtaining employment which is not pre-approved by supervising parole agent

- Prohibition against viewing or possessing pornographic material
- Prohibition against being outside of approved residence after 10 p.m. and before 6 a.m.
- Requirement that software be installed to monitor or limit Plaintiff's computer usage
- Prohibition against access to social media

Compl. at ¶ 37; *see also id.* Ex. D.

Plaintiff alleges that none of the special conditions imposed on him bears any legitimate relationship to circumstances surrounding his conviction and that DAPO is unreasonably restricting his life. *Id.* at ¶ 38. Plaintiff has no prior criminal history (besides the two-count conviction in Massachusetts) and has no pattern or history of alcohol abuse. *Id.* at ¶ 39. In addition, Plaintiff was never afforded a hearing or evaluation before the imposition of these additional conditions to justify the necessity of such conditions. *Id.* None of the imposed conditions are mandated by state or municipal law but rather they are discretionary conditions imposed by DAPO. *Id.* at ¶ 41. On April 13, 2018, Plaintiff sent letters to Defendants detailing the issues with the circumstances of his transfer and he has received no response. *Id.* at ¶ 45.

Plaintiff contends that the entities or agencies involved are exercising extrajudicial power in declaring conditions of parole without notification and without judicial intervention, in violation of the due process clause. *Id.* at ¶ 22. In the same vein, Plaintiff contends that DAPO lacks the authority to increase his punishment beyond what the Worcester Court deemed sufficient via the imposed probation conditions without any judicial process. *Id.* at ¶ 42. Plaintiff alleges that the ICAOS, DAPO, and the Interstate Compact Administrator of California, Defendant Pennella, have exercised an unconstitutional power to modify court orders as they see fit, without notification to the affected party or judicial review of any sort in violation of his substantive and procedural due process rights. *Id.* at ¶ 46. In addition, Plaintiff submits that because he is a probationer and not a parolee he is not subject to weight of the government's interest to rehabilitate prisoners through parole and that the nature and purposes of probation are different than that of parole. *Id.* at ¶ 42. Plaintiff served his term of incarceration and now is serving a sentence of probation, which had minimal terms attached to it and so he should not be subject

to the more restrictive aims of incarceration and the parole system. *Id.* Plaintiff alleges that such transfer from probation to parole also violated his substantive and procedural due process rights. *Id.* at ¶ 46. Plaintiff also alleges that the interstate transfer which involved a transfer of probation to parole, despite the similar structure of the Massachusetts and California parole and probation systems, shows discrimination against him with regard to the nature of his offense or personal bias of a member of ICAOS or its agents towards him, his race, or sexual orientation but does not elaborate further elaboration. *Id.* at ¶ 43. Lastly, Plaintiff also submits that the requirements to submit to polygraph and waive his privilege during his mandated therapist session is a violation of his Fourth and Fifth Amendment rights. *Id.* at ¶¶ 40, 51.

Plaintiff has sued the ICAOS; Anthony Robert Pennella, alleged to be the administrator for the Interstate Compact for the State of California; Jerry E. Powers, the director of CDCR's DAPO, an agency devised by the State of California to enforce standards related to lawful re-incarceration, rehabilitation, and supervision of convicted prisoners who have been conditionally released; G. Hoffman, the supervising parole agent for the Hanford Office for the DAPO; and B. Rodriguez, the parole agent for the Hanford office who began implementation of Plaintiff's conditions of parole supervision. *Id.* at ¶¶ 5-9.

Plaintiff alleges that these Defendants, personally or by way of their proxies and representatives, have promulgated or enforced, or caused the implementation standards, policies, and customs which have directly violated Plaintiff's rights to substantive and procedural due process under the Fourteenth Amendment and in violation of Plaintiff's right against self-incrimination pursuant to the Fifth Amendment. *Id.* at ¶ 48. Specifically, Plaintiff takes issues with 1) being treated as a parolee without any adjudication; 2) the imposition of special conditions of parole well beyond the probation conditions imposed by the Massachusetts state judge and which are not tailored to the actual facts surrounding his offense; and 3) Defendant Powers violating the rights of all parolees as protected by the Fourth and Fifth Amendments by imposing a condition which allows for the waiver of psychologist-patient privilege in

mandated sessions which information could then be used by the state in a possible criminal investigation unrelated to his current conviction. *Id.* at ¶¶49-50.

### III. <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Pro se complaints are held to less stringent standards than pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and courts must "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) This is particularly true when a pro se litigant is alleging civil rights violations. *See Karim-Panahi v. Los Angeles Police Dep't*, 839F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se,

the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").
"[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give
the plaintiff a statement of the complaint's deficiencies" and leave to amend will be given unless it is
absolutely clear that the deficiencies cannot be cured by amendment. *Id.*

## IV. DISCUSSION

Both the ICAOS and the individual Defendants argue that the Complaint should be dismissed
without leave to amend because the Interstate Compact does not create a private cause of action for a
plaintiff such as Lucero to enforce the provisions of the Interstate Compact. However, even if this is
true, the argument does not dispose of the constitutional violations alleged in Plaintiff's Complaint.

ICAOS additionally argues that the ICAOS is not a person acting under color of state law. ECH
No. 26-1 at 8. The argument ICAOS appears to be making in this regard is that it is entitled to immunity
under the Eleventh Amendment as an agency that functions as an arm of the state. *Id.* ICAOS also
argues that it has not done anything relative to Plaintiff. ECF No. 26-1 at 7. The individual Defendants,
Pennella, Powers, Hoffman, and Rodriguez, also argue that Plaintiff has failed to allege sufficient facts
as to their personal participation to state a claim against any of the named Defendants.[3]

---

[3] The individual Defendants request that the Court take judicial notice of the information contained on the ICAOS website as
information that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned
under Federal Rule of Evidence 201(b)(2). ECF No. 24-1 at 4, n.2. Defendants generally cite to the website to indicate what
the Interstate Compact is, its purpose and cite to specific rules promulgated by the Commission. Plaintiff objects to the
consideration of the website as improper because it goes beyond the pleadings. ECF No. 29 at 8-10. Plaintiff specifically
objects on the grounds that 1) the request exceeds the scope and purpose of the motion; 2) Plaintiff disputes the accuracy of
the information; and 3) based on fact that the ICAOS, who creates and updates its website, is a Defendant in this matter with
the ability to change information contained therein. *Id.* at 9.

Under Federal Rule of Evidence 201(b)(2), a court may take judicial notice of fact that is not subject to reasonable dispute
because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.
Evid. 201(b)(2). ICAOS is considered a "quasi-governmental administrative body vested by the states with broad regulatory
authority." *Wofford v. Superior Court*, 230 Cal. App. 4th 1023, 1029 (2014), *as modified on denial of reh'g* (Nov. 14, 2014)
(citation omitted). Generally, information available on websites of government agencies or government contractors are
appropriate subjects of judicial notice. *See, e.g., ] Cachil Dehe Band of Wintun Indians of the Colusa Indian Comm'ty v.
California*, 547 F.3d 962, 968–69 n. 4 (9th Cir. 2008) (taking judicial notice of Tribal–State Gaming Compacts located on
official California Gambling Control Commission website and noting that Federal Rule of Evidence 201 "permits us to 'take
judicial notice of the records of state [entities] and other undisputed matters of public record,' [including] executed Compact
[s] ... not in the district court record.") (citation omitted); *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1384
(C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Because all of these

8

## A. Private Right of Action Under § 1983 For Violations of ICAOS

Both the ICAOS and the individual Defendants' briefs argue that there is no federally enforceable private right of action under § 1983 for violations of the Interstate Compact. ECF No. 24-1 at 8-10; ECF No. 26-1 at 4-6. The individual Defendants argue that the claims fail in their entirety on the basis of this argument and should dismissed without leave to amend. ECF No. 24-1 at 10. The Court first addresses this argument before moving to the separate arguments of the ICAOS and the individual Defendants.

In *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 104-05 (3d Cir. 2008), the plaintiff was convicted of a sex offense in New Jersey and applied under the Interstate Compact to transfer to Pennsylvania. Pennsylvania required as prerequisite to accept the out of state probationer's transfer that every out-of-state probationer convicted of a sex offense submit to community notification, a requirement that was only imposed on in-state probationers convicted of sex offenses if it was determined, after a hearing, that they were "sexually violent predators." *Id.* at 101, 110-11. The Pennsylvania Board of Probation and Parole denied the plaintiff's application for transfer of probation to Pennsylvania because he refused to consent to the community notification requirement. *Id.* at 99-100. The plaintiff filed an action under § 1983 alleging, among other things, that the Pennsylvania Board of Parole and its Board Chairman violated his right to equal protection and due process under the United States Constitution and violated his statutory rights under the Interstate Compact. *Id.* at 100. The Third Circuit analyzed whether the plaintiff could bring a claim under § 1983 to enforce provisions of Interstate Compact:

---

documents are available on the websites of government agencies or a government contractor, they are appropriate subjects of judicial notice."); *Preciado v. Wells Fargo Home Mortg.*, No. 13-00382 LB, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) ("Judicial notice is also appropriate for Exhibit G, because it is information obtained from a governmental website.") (collecting cases).

Most of the information that Defendants request judicial notice of are general facts about the purpose and function of ICAOS, some of which is briefly mentioned in Plaintiff's Complaint. *See, e.g.*, Compl. at ¶ 9. For purposes of providing context and because most of this information's accuracy cannot reasonably be questioned, the Court will take judicial notice to the extent necessary to provide contextual background of what ICAOS is and does. However, for the purposes of this motion it also does not appear that the content of the ICAOS rules is determinative of any of the substantive arguments made by the individual Defendants. Nevertheless, the Court cites them for Plaintiff's reference herein.

Because the Compact does not manifest either expressly or indirectly an intent to create a federal right or remedy, we hold that the Compact itself does not create an enforceable right. The language of the Compact itself creates rights for the various states who are signatories to it. It does not create rights for probationers or parolees. Notably, the title under which Congress approved the Compact—"An act granting the consent of Congress to any two or more states to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and for other purposes"—supports our inference that Congress approved the Compact as a means of aiding the states in crime prevention, not as a vehicle to provide procedural rights for probationers and parolees.

At the second point of inquiry, the Probation Compact regulates interactions among the states, delineating one state's rights and responsibilities to another. Regarding the strictures imposed by one state on probationers from another, the Compact described such requirements as duties that will be "governed by the same standards that prevail for its own probationers and parolees." 61 Pa. Stat. Ann. § 321(2) (2002). As was the case in [*Alexander v. Sandoval*, 532 U.S. 275 (2001)], the Compact here focuses upon the State entities regulated by the standards, "rather than the individuals protected." *Sandoval*, 532 U.S. at 289, 121 S.Ct. 1511. The Compact, we conclude, creates "no implication of an intent to confer rights on a particular class of persons." *Id.*

Lastly, the Compact has no mechanism by which to enforce the alleged "rights" of probationers or parolees. The Compact mentions neither court adjudication nor administrative proceedings. These omissions further lead us to conclude that Congress did not intend to create an enforceable federal right for probationers or parolees under this Compact.

We hold that Doe does not have a private right of action under Section 1983 to enforce the provisions of the Interstate Compact because one cannot be inferred from its terms.

*Id.* at 104-05 (footnote omitted).

Similarly, the Second Circuit in *M.F. v. State of New York Exec. Dep't Div. of Parole*, 640 F.3d 491, 497 (2d Cir. 2011), held that the Compact and its authorizing statute do not create an express or implied federal private right of action such that the plaintiff could not challenge the New York Division of Parole's proposed special conditions on the basis that those conditions violate the Interstate Compact. However, as the court in *Doe* recognized, the fact that there is no private right of action under § 1983 to enforce the provisions of the Compact does not end the inquiry of whether the plaintiff's constitutional rights were violated. *Doe v. Pennsylvania Bd. of Prob.*, 513 F.3d at 107. The court in *Doe* found that the disparate treatment of out-of-state sex offenders with regard to community notification requirement without providing equivalent procedural safeguards that in-state sex offenders received was not rationally

related to goal of protecting its citizens from sexually violent predators and thus violated the Equal Protection Clause of Fourteenth Amendment of the Constitution. *Id.* at 112.

Plaintiff responds that he does not allege a violation of any rules promulgated by the ICAOS, nor does he challenge any provisions of the Compact but instead "brings this action purely upon constitutional grounds, thus making it actionable pursuant to Section 1983." ECF No. 29 at 3-4. Plaintiff is alleging that his constitutional rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment (and his Fourth and Fifth Amendment rights) have been violated by converting his supervision from court-monitored probation to state prison-parole and by implementing certain conditions which modify the conditions imposed by the sentencing court. *Id.*[4] The Court agrees that when reading the Complaint, particularly when it is liberally construed, it does not appear that Plaintiff is alleging his rights were violated as a result of ICAOS rules or lack thereof. Therefore, Defendants' argument that there is no private right of action to enforce the Interstate Compact does not provide a legitimate basis to dismiss the allegations in the Complaint.

To the extent it can be said that any of the claims arguably attempt to allege violations of the Compact or ICAOS Rules as violations of § 1983, the Court here agrees with the reasoning of the Second

---

[4] Certain statements made in the opposition seem to contradict Plaintiff's position that he is not bringing claims for violations of the ICAOS. For example, Plaintiff states that the individual Defendants' claim that both the sending and receiving states can impose conditions of supervision is improper opinion and that the "the operative question would still be whether or not ICAOS rules permitting executive agencies to act so extrajudicially in the treatment of offenders so as to disregard orders from a court of competent jurisdiction is in itself unconstitutional." *See* ECF No. 29 at 7. However, in construing the Complaint liberally and in the light most favorable to Plaintiff, the Court finds that the crux of Plaintiff's claims are his allegations of constitutional violations. The Court notes for Plaintiff's benefit that the Interstate Compact Rules allow receiving states to impose additional conditions of supervision. Rule 4.103 provides:
   (a) At the time of acceptance or during the term of supervision, the receiving state may impose a condition on an offender if that condition would have been imposed on an offender sentenced in the receiving state.
   (b) A receiving state shall notify a sending state that it intends to impose, or has imposed, a condition on the offender.
   (c) A sending state shall inform the receiving state of any conditions to which the offender is subject at the time the request for transfer is made or at any time thereafter.
   (d) A receiving state that is unable to enforce a condition imposed in the sending state shall notify the sending state of its inability to enforce a condition at the time of request for transfer of supervision is made.
ICAOS Rule 4.103, *available at* https://www.interstatecompact.org/step-by-step/chapter/4/rule-4-103 (last visited July 14, 2019); *see also* ICAOS Rule 4.101 ("A receiving state shall supervise offenders consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other supervision techniques.").

and Third Circuit holdings that there is no privately enforceable right of action under § 1983 for violations of the Interstate Compact. However, as indicated in his opposition, it is not Plaintiff's intent to state such claims but rather he submits that the alleged misconduct amounts to constitutional violations. Therefore, the motions to dismiss on this ground that there is not privately enforceable right under § 1983 for violations of the Compact are DENIED.

**B.    Individual Defendants' Motion**

The individual Defendants make two other arguments in their motion to dismiss in addition to the one discussed above. They argue that Plaintiff has failed to alleged sufficient facts as to their personal participation to state a claim against any of the named Defendants, and also argue that Plaintiff is not entitled to injunctive relief. ECF No. 24-1 at 6, 10. Each of the arguments is discussed below.

**1.    Failure to Allege Sufficient Facts**

Defendants Pennella, Powers, Hoffman, and Rodriguez argue that Plaintiff has failed to state a claim against the named Defendants because the Complaint does not allege specific facts as to what acts these Defendants personally participated in that resulted in the deprivation of rights under § 1983. ECF No. 24-1 at 6-8. Specifically, the individual Defendants argue that the Complaint only mentions the named Defendants three times and does not allege facts linking the named Defendants to a constitutional violation. *Id.* at 8. In response, Plaintiff argues that his Complaint alleges that the California Defendants "personally or through the authorization of their respective agents, representatives, subordinates, and servants violated his rights to substantive and procedural due process as guaranteed Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, through the conversion of his transferred supervision from court monitored probation to state-prison parole upon arrival to the receiving state of California, and the extrajudicial implementation of certain conditions in such a way that modifies those ordered by the sentencing court." ECF No. 29 at 3.

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived

plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard,* 145 F.3d 1078, 1082 (9th Cir. 1998). Defendants do not challenge that they were acting under the color of state law, nor do they challenge whether Plaintiff's alleged facts – specifically, the imposition of additional special conditions and the transfer from probation to parole – amount to a constitutional violation. The individual Defendants simply argue that Plaintiff has not alleged sufficient facts as to these individual Defendants to support the claim and do not separately address the merits of each of the alleged violation under the Fourth, Fifth, and Fourteenth Amendments.[5] Accordingly, the Court assumes for the purposes of the motion to dismiss that the facts alleged, if sufficiently pled as to a particular Defendant, would amount to a violation of Plaintiff's constitutional rights and state a valid § 1983 claim without specifically addressing each alleged violation.[6]

To state a claim for relief against each of the individual Defendants, "[Plaintiff is] required to allege facts demonstrating each individual's personal involvement in a constitutional violation." *Davis v. Folsom Cordova Unified Sch. Dist.*, 674 F. App'x 715, 717 (9th Cir. 2017). This requires a causal connection to the deprivation which Plaintiff complains. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id*. As the Supreme Court held in *Ashcroft v. Iqbal*, a Plaintiff must plead that each

---

[5] The individual Defendants also make no arguments regarding the propriety of the official capacity versus individual capacity claims against the individual Defendants and thus the Court also does not address the different nature of each of these claims.

[6] Count Three in the Complaint complains that the waiver of the psychotherapist-patient privilege as a special condition of parole is a violation of Fourth and Fifth Amendments. Compl. at ¶ 51. The Court notes that for certain sex offenders, California statute requires the waiver of the psychotherapist-patient privilege as a condition of probation and parole. *See* Cal. Penal Code § 1203.067(b)(4) & Cal. Penal Code § 3008(d)(4). Plaintiff's Complaint does not make clear if he is challenging the constitutionality of the statute or its applicability to him. Additionally, Plaintiff's Complaint, besides in Count Three, does not clearly specify which special conditions are violating his Fourteenth Amendment rights or if his is challenging all of them. *See Thornton v. Brown*, 757 F.3d 834, 843-44, n. 9 (9th Cir. 2013) (parolee could challenge two conditions of parole under § 1983 if it would neither result in speedier release from parole nor imply the invalidity of the criminal judgements but declining to address whether § 1983 would be appropriate if Plaintiff was challenging all or a substantial portion of his parole conditions). However, the Court declines to address the individual counts or the lack of clarity since the Defendants have not done so.

13

defendant, through the individual's own actions, has violated the Constitution. 556 U.S. at 676.

In addition, "[u]nder Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability. A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citation omitted); *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). In the absence of personal involvement in the constitutional violation, "[t]he requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (citation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1208); *Hansen*, 885 F.2d at 646 (in absence of overt personal participation, Plaintiff must allege facts to show that supervisory defendants "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.") (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (internal quotations marks omitted)).

As Plaintiff points out in his opposition, G. Hoffman is the supervising parole agent who "personally imposed and tacitly authorized the specific conditions of which Plaintiff complain[s]". ECF No. 29 at 3; *see also* Compl. at ¶ 7 & Ex. D. Exhibit D to the Complaint indicates Hoffman signed the document that authorized the imposition of the 40 additional special conditions of parole. The Court assumes without deciding that the imposition of these parole special conditions without a hearing amounts to a constitutional violation as alleged since the individual Defendants have not challenged this.

Assuming the constitutional violation occurred, the Complaint specifically indicates what Hoffman's role was in the alleged violation – he was aware of and participated in the implementation of the special parole conditions. Similarly, Plaintiff alleges that B. Rodriguez initiated supervision of Plaintiff under the complained of special conditions and was directly involved in the imposition of the conditions as indicated by his signature on Exhibit D. *Id.* at ¶ 8. These allegations and the attached document imposing the special conditions, though sparse, indicated that Hoffman and Rodriguez were directly involved in the Complaint's alleged constitutional violation and are sufficient to "give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. Accordingly, the Court rejects Defendants Hoffman and Rodriguez's argument that Plaintiff has not alleged sufficient facts to allow the court to infer that these Defendants were "personally involved in adding conditions to his supervised release." *See* ECF No. 24-1 at 8.

As to Anthony Pennella, Plaintiff's opposition copies the paragraph from the Complaint which indicates Mr. Pennella is the Administrator of the Interstate Compact in California and indicates that the administrator is responsible for implementing the acceptance, rejection, or termination of supervision of an offender under the compact and responsible for processing requests for supervision of offenders from sending states. ECF No. 29 at 13 (citing CDCR Department Operations Manual § 81060.3).[7] As such, Plaintiff argues Pennella is the only conceivable individual who accepted and coordinated the transfer of Plaintiff's probation and was thus responsible for the switch from probation to parole. While the portion of the CDCR Department Operations Manual quoted is not contained in the Complaint, the Complaint gives fair notice to Defendant Pennella that the complained of conduct -being transferred from probation to parole – is the culpable conduct Plaintiff alleges Pennella is responsible for. Again because Defendants do not challenge whether the transfer from probation to parole without a hearing amounts to a

---

[7] Plaintiff cites to the CDCR Manual in his opposition to indicate Pennella's responsibilities. As the individual Defendants have not opposed its consideration and the accuracy of CDCR's manual would not appear to be questioned, the Court takes judicial notice of the cited portion of the manual relating to the responsibilities for the Compact administrator.

constitutional violation, the Court assumes it is a cognizable legal theory for the purposes of the motion. As such the allegation that Pennella is responsible for processing requests for interstate transfer is sufficient to allow the Court to infer – thought just barely –his direct involvement in the complained of deprivation. *See, e.g.*, *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018).

With respect to Defendant Jerry Powers, Plaintiff copies the paragraph from the Complaint which indicates that Powers is the Director of the CDCR's DAPO which is responsible in California for enforcing standards related to "lawful re-incarceration, rehabilitation, and supervision of convicted prisoners within the State who have been conditionally released to their respective communities." ECF No. 29 at 15-16. Plaintiff's opposition further submits that the DAPO Director is responsible for establishing and maintaining CDCR's overall parole supervision efforts. *Id.* (citing CDCR Department Operations Manual § 85030.4). Plaintiff argues that the reasonable inference from these two facts are that "1) it is indisputable that Defendant Powers personally designated Defendant Pennella to the position of Compact Administrator, 2) that Defendant Powers is responsible for maintaining, establishing, directing, and supervising all parole operations within California, and 3) that Defendant Powers was notified of Plaintiffs specific claims, had the power to relieve the civil rights violations, and refused to do so." ECF No. 29 at 16. However, designating Defendant Pennella to the position of Compact Administrator does not amount to a constitutional violation even under the facts alleged. Nor is being generally responsible for "supervising all parole operations within California" specific enough conduct to infer Powers directly participated in the alleged constitutional violations and/or wrongdoing with respect to Plaintiff. As noted above, this the type of generalized allegation that is not sufficient to impose supervisor liability in the absence of personal participation. "General allegations that do not establish a link between the conduct alleged and specific defendants do not meet the minimal pleadings required to defend against a Rule 12(b)(6) motion" and allegations of what Defendants "in general knew or did" lacks the requisite specificity. *Vivanco v. California Dep't of Corr. & Rehab.*, No. 117CV00434LJOBAM, 2017 WL 2547026, at *3-*4 (E.D. Cal. June 13, 2017). Plaintiff cannot hold Powers liable just because he

supervises all parole operations in the state of California. To the extent that Plaintiff argues that he sent letter to all the Defendants and none responded this is not alleged to be a constitutional violation and also not specific to Defendant Powers' conduct, knowledge, or acquiesce. "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). As such, Defendant Powers' motion to dismiss is granted but Plaintiff is granted leave to amend if he has additional facts to allege that indicate Powers was in some way culpable for the alleged wrongdoing that relates directly to Plaintiff instead of generalized allegations of Powers' broad supervisory duties. However, if Plaintiff has no further facts to allege then he should not amend.

In conclusion, Defendants Hoffman, Rodriguez, and Pennella's motions to dismiss are DENIED and Defendant Powers' motion to dismiss is GRANTED with leave to amend.[8]

## 2.  <u>Injunctive Relief</u>

In addition, the individual Defendants argue that Plaintiff has not shown he is entitled to injunctive relief. ECF NO. 24-1 at 10-11. In making this argument, the individual Defendants list the criteria that courts consider when granting a preliminary injunction but they make no effort to evaluate these criteria in the context of this case. The individual Defendants simply state that Plaintiff has not made a showing that the facts and law clearly favor him and conclude that his request for injunctive relief thus fails. This argument is unsupported by law or analysis as applied to the facts alleged here. Besides stating that Plaintiff is seeking a mandatory injunction as opposed to a prohibitory injunction and that such injunctions are disfavored, the individual Defendants provide no support or reasoning for why the injunctive relief should be dismissed at this stage of the case. The Court declines to entertain this

---

[8] Plaintiff mentions Defendants' argument that Plaintiff has not shown that the restrictions imposed upon him are different from those imposed on in-state offenders. ECF No. 29 at 10. While Defendants' notice of motion mentions this as a basis for the motion, the memorandum of points of authorities makes no such argument and thus the Court will not address this unsupported argument. *Compare* ECF No. 24 at 2 *with* ECF No. 24-1 at 10.

1 unsupported and poorly briefed argument.[9]

2 **C.    Interstate Commission For Adult Offender Supervision's Motion**

3 ICAOS's separate motion to dismiss makes two additional arguments, besides the one discussed

4 above in Section IV.A. ECF No. 26-1. ICAOS argues that there are 1) no acts alleged to have been taken

5 by Commission with respect to Plaintiff and 2) the Commission does not function like a local entity and

6 is not a person acting under the color of state law pursuant to § 1983. ECF No. 26-1 at 7-8. ICAOS's

7 latter argument amounts to a claim that it is entitled to Eleventh Amendment immunity if the agency is

8 an arm of the state (and thus does not constitute a "person acting under color of state law" for purposes

9 of stating a § 1983 claim). *Id.* ICAOS cites to *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy*

10 *Corp.*, 948 F.2d 1084 (8th Cir. 1991) as setting forth the factors for consideration when evaluating

11 whether a bistate agency is an arm of the state, and thus protected by Eleventh Amendment immunity, or

12 is otherwise comparable to a local governmental entity and subject to suit. The factors include:

13 (1) whether the compacting states characterize the agency as an arm of the compacting
states or as a local governmental entity; (2) whether the compacting states fund the agency;
14 (3) whether the compacting states are financially responsible for the liabilities and
obligations the agency incurs; (4) whether the agency's commissioners are appointed by
15 the compacting states or by local governments; (5) whether the functions the agency
performs are traditionally state or municipal; and (6) whether the compacting states can
16 veto the agency's actions.

17 *Id.* at 1086. However, ICAOS does not evaluate whether it functions as arm of the state under the factors

18 it cites and does not elaborate on how these factors weigh in favor of treating it as an arm of the state as

19 opposed to a local government entity. Instead, ICAOS's only argument is that "[t]he allegations do not

20 suggest that the Commission operated like a local governmental entity in attempting to enforce any terms

21 or restrictions on Plaintiff." ECF No 26-1 at 8. ICAOS's argument is lacking and without citing case law

22

23 ───────────────
[9] Plaintiff filed a motion for a preliminary injunction/temporary restraining order, ECF No. 5, and the Magistrate Judge denied
24 the motion for temporary restraining and indicated that Plaintiff could renew his motion for preliminary injunction if the
Complaint survived the screening process. ECF No. 7. Plaintiff renewed his motion for preliminary injunction after service of the
Complaint on Defendants was found to be appropriate. ECF No. 14. However, the Magistrate Judge ordered the renewed
25 motion be stricken for being unsigned and indicated that any refiled motion cannot exceed 25 pages. ECF No. 20. Plaintiff
has not refiled the motion for preliminary injunction.

to support its argument simply states that Plaintiff has not alleged that it operated like a local government entity. The Court here does not presently have before it enough information or briefing to evaluate the factors considered to determine whether ICAOS is more akin to arm of the state or more akin to a local or municipal government.[10] At this stage, ICAOS has not made a convincing argument for why ICAOS is not a "person" under § 1983. As ICAOS has failed to provide an analysis of the relevant factors as applied to it, the Court declines to make a determination on ICAOS's argument it functions like an arm of that state and is entitled to Eleventh Amendment immunity.

However, the Court agrees with Defendant ICAOS that Plaintiff has not alleged any facts that specifically indicate what the Commission did or did not do with respect to Plaintiff. *See* ECF No. 26-1 at 7. Besides generalized allegations as to all the Defendants, the Complaint does not make clear whether or how ICAOS was particularly involved in Plaintiff's transfer and, more importantly, the alleged subsequent constitutional violations. Plaintiff alleges he had two brief phone calls with the Sacramento ICAOS office and one conversation with Donna Reed in the Massachusetts ICAOS office. None of these conversations evidence constitutional violations or show misconduct of the ICAOS employees, let alone the Commission itself. Plaintiff does not connect the scarce facts which merely reference ICAOS with the alleged misconduct relating to his transfer to parole and the imposition of special conditions.

Nor do the general allegations stating that all the Defendants generally "caused the implementation of standards, policies, and customs which have directly resulted in the violation of Plaintiff's right to substantive and procedural due process[,]" Compl. ¶ 48, amount to anything more than conclusory statements. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Also, claims for a policy or custom

---

[10] ICAOS's reply brief attached over 200 pages of documents, including the ICAOS bench book and certain rules. ECF No. 30 at 3, n.1. The reply brief provides little to no elaboration about the relevancy of these documents and on which facts support its argument that it is an arm of the state. The Court does not find it appropriate to consider this reply brief submission and is not inclined to sift through the attached documents to make a fact intensive inquiry into the issue that was not briefed sufficiently in the motion to dismiss.

are subject to "heightened requirements for establishing responsibility" which are necessary to avoid inappropriately imposing *respondeat superior* liability in violation of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). The Complaint is devoid of specifics as to any ICAOS policy or custom. The absence of such specifics makes it impossible to determine how or whether ICAOS could be liable for the alleged constitutional violations under any cognizable legal theory. The Complaint also does not allege any action taken by the ICAOS with respect to Plaintiff's alleged constitutional violations and Plaintiff's opposition indicates that he is not alleging any violation of his rights under the Interstate Compact itself. It is not clear what policy claims Plaintiff could possibly state against the ICAOS since the Court has determined that there is no private right of action enforceable for violations of the Compact or the ICAOS Rules. *See supra* Section IV.A. Plaintiff's opposition states that "Plaintiff is not suing the Commission for the conditions themselves, but only 'authorizing the imposition of certain conditions on Plaintiff being that it's commissioner, Defendant Pennella, …acted in his capacity as a cog in the machine that is the Commission to deprive the Plaintiff of constitutional rights." ECF No. 28 at 9-10. First, the Complaint itself makes no direct allegation in this respect. Second, as noted this theory of entity liability is not permissible under *Monell*, since an entity cannot be held liable "solely because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 690.

As a second failing, to state a claim under § 1983, plaintiff must allege that the *defendant was acting under color of state law* at the time the complained of act was committed. *Jensen*, 145 F.3d at 1082. A plaintiff must specifically "show that the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Tsao*, 698 F.3d at 1139 (citations and internal quotations marks omitted). "[P]laintiff[] ha[s] the burden of pleading and proving that defendants are 'state actors' for purposes of his section 1983 claim. *Sui v. Southside Towing*, No. SACV 10-01973 JAK, 2011 WL 2940990, at *4 (C.D. Cal. July 18, 2011); *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997); *see*

*also Birrell v. Banzhaf*, No. 2:14-CV-01024 JAM DB, 2017 WL 1153015, at *7 (E.D. Cal. Mar. 28, 2017), *report and recommendation adopted,* No. 2:14-CV-1024 JAM DB, 2017 WL 3023519 (E.D. Cal. July 17, 2017). Currently, the only paragraph in the Complaint which discusses the ICAOS specifically indicates that ICAOS "is not a federal agency or legislative body" but rather a "commission composed of representatives of those several states which have ratified and adopted the Compact. . . ." Compl. at ¶ 9. As such Plaintiff must *plead* facts, if he has facts which would support the contention, to indicate ICAOS is an entity that exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Plaintiff is warned that conclusory allegations that ICAOS is an entity acting under the color of state law is insufficient under the pleading requirements. *See DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) ("the plaintiff must allege 'facts tending to show that [the defendants] acted 'under color of state law or authority'"); *Sui*, 2011 WL 2940990, at *4 ("bare allegation" is insufficient).

The Complaint does not allege sufficient facts as to what ICAOS did with respect to Plaintiff or whether it was acting "under the color of state law." The Court further notes that if Plaintiff is attempting to hold ICAOS liable as a local government entity, sufficient factual allegations must be alleged and also meet the requirements to state a claim under *Monell*. *See Tsao, Inc.*, 698 F.3d at 1139 ("To make out a claim against [Defendant] under *Monell*, [Plaintiff] must show that (1) [Defendant] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [Defendant]."). Accordingly, Defendant ICAOS's motion to dismiss is GRANTED. In an abundance of caution, the Court will allow Plaintiff leave to amend its claim against ICAOS but cautions Plaintiff that he should only do so if he can state a cognizable claim, as dictated herein. This includes sufficient facts as to ICAOS's actions specifically amounting to constitutional violations, and facts which indicate that ICAOS is acting "under the color of state law" as required to state a claim under § 1983.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, Defendants Hoffman's, Rodriguez's, and Pennella's motions to

21

dismiss are DENIED and Defendant Powers' motion to dismiss is GRANTED with leave to amend. ECF No. 24. Defendant ICAOS's motion to dismiss is GRANTED with to leave to amend. ECF No. 26. Plaintiff is cautioned that he should only amend as to Defendant Powers and Defendant ICAOS if he has additional facts to allege that could plausibly suggest some sort of liability specifically related to their conduct respectively and pursuant to a cognizable legal theory. Generalized allegations concerning the role, duties, and function of Defendant Powers and the ICAOS will not suffice.

Plaintiff will have thirty (30) days from the date of this order to file an amended complaint or alternatively to file a statement indicating he will proceed on his Complaint as is, without the inclusion of Defendant Powers or Defendant ICAOS. Defendant Powers and Defendant ICAOS will have twenty-one (21) days from the date of Plaintiff's filing to file an appropriate motion or responsive pleading.

IT IS SO ORDERED.

Dated: __**July 25, 2019**__ _____**/s/ Lawrence J. O'Neill**_____
UNITED STATES CHIEF DISTRICT JUDGE